IN RE PRESENTMENT OF THE ESSEX COUNTY GRAND JURY.

HARRY ROSEN, MOVANT-APPELLANT AND CROSS-RESPONDENT, v. STATE OF NEW JERSEY, RESPONDENT AND CROSS-APPELLANT.

Argued December 7, 1965—Decided March 7, 1966.

*Mr. Matthew P. Boylan* argued the cause for movant-appellant and cross-respondent (*Messrs. Crummy, Gibbons & O'Neill,* attorneys; *Mr. Boylan,* of counsel).

*Mr. Brendan T. Byrne,* Essex County Prosecutor, argued the cause for respondent and cross-appellant (*Mr. Byrne,* attorney; *Mr. Robert F. X. O'Keefe,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered

PER CURIAM. The appellant, Harry Rosen, public relations officer of the Newark police department, moved to expunge a paragraph in a presentment made by the Essex County Grand Jury in April 1965 because, he claimed, it constituted improper censure of him as a public official. See *In re Presentment by Camden County Grand Jury,* 34 *N. J.* 378 (1961). Assignment Judge Waugh struck a portion of the paragraph and ordered the document filed as so altered. It was then made public. Rosen appealed from the refusal to expunge the paragraph in its entirety and the State cross-appealed from the action of the judge in striking the portion he did. *R. R.* 3:3–9(e). We certified the appeals on our own motion before hearing in the Appellate Division. *R. R.* 1:10–1(a).

In the course of its service, this Grand Jury had presented to it by the Prosecutor evidence resulting from his investigation of an anonymous communication which had previously come to his attention. The communication, while speaking particularly of a gambling operation at a named location and related bizarre police action, or more accurately, lack of it, some six months previously, also contained serious allegations suggesting nonfeasance, malfeasance and neglect of duty by some members of the Newark Police Department in enforc-

ing the criminal law, especially in regard to gambling and organized crime. After the jury had heard the testimony about the particular gambling operation, the Prosecutor advised the Assignment Judge of the whole situation, who then gave the jury a comprehensive supplemental charge. He indicated that the jury should hear additional evidence and thoroughly probe the matter of police activity against organized gambling in Newark, as well as the internal administration of the department. The presentment in question was one of the results of this probe.

At the inception of its service, the jury had received the customary charge of the court outlining its general powers, duties and obligations. Included were instructions concerning its power to make presentments and the procedure to be followed in such case. The judge said, substantially utilizing the language of this court in *In re Presentment by Camden County Grand Jury, supra* (34 *N. J.,* at *p.* 391):

"The subject matter of a presentment must be a matter of general public interest, or relate to some aspect of public affairs, or to some public evil or condition to which, in the discretion of the jury, the attention of the community should be directed. And censure of a public official is permissible only where it may be said with absolute certainty that his connection with the condemned matter is such that its existence is inextricably related to non-criminal failure to discharge his public duty. More particularly and by way of further qualification, the criticism of the individual is allowable only where it is integrally associated with the main purpose of the report, i. e., to draw critical attention to some undesirable condition in the affairs of the public."

This was followed in the charge by the comment:

"There can be no compromise with crime or criminals. All of us charged with the administration of the law in this County—and you are now a part of that administration—must be vigilant to eradicate crime. Complacency of the community and those charged with the administration of the criminal law therein, is not to be tolerated. Fair and impartial enforcement of all criminal laws is the keystone to the preservation of order and decency."

At this point we may well dispose of the appellant's subsidiary contention to the effect that this presentment is

an illegal one because "the Assignment Judge never instructed the Grand Jury on the issues and proof requirements necessary to censure a public official in a presentment." Assuming the presentment paragraph objected to amounts to censure, the point is utterly frivolous. The jury was fully advised on the subject. Moreover, there is no legal requirement that a Grand Jury must be specifically instructed on a particular matter or a particular procedure before it may act by way of indictment on presentment. As to the latter, our rules place the obligation on the Assignment Judge to whom a presentment is returned to be assured of its propriety before filing it and making it public. *R. R.* 3:3–9(c) provides:

"Promptly and before the grand jury is discharged, the Assignment Judge shall examine the presentment. If it appears that a crime has been committed for which an indictment may be had, he shall refer the presentment back to the grand jury with appropriate instructions. Where a public official is censured the proof must be conclusive that the existence of the condemned matter is inextricably related to non-criminal failure to discharge his public duty. If it appears that the presentment is false, or is based on partisan motives, or indulges in personalities without basis, or if other good cause appears, he shall strike the presentment either in full or in part. As an aid in examining the presentment the Assignment Judge may call for and examine the minutes and records of the grand jury, with or without the aid of the foreman or the prosecutor, to determine that a substantial foundation exists for the public report. Where the presentment reprobates a public official and the Assignment Judge determines not to strike, upon such aggrieved petitioner's motion there shall be a hearing. Such petitioner may examine the grand jury minutes fully, under such reasonable supervision as the court deems advisable, and he shall be permitted to introduce additional evidence to expose any deficiency."

In considering the appellant's main contention of alleged improper censure, the presentment must be viewed as a whole. After outlining the background of the jury investigation which we have previously mentioned, the document reported that the jury had devoted the major portion of its attention to a consideration of organized crime in Newark and the ability of the city police department to cope with it. It stated that it had comment and recommendations to make

based on the testimony of the more than 40 witnesses, including top ranking officials in the city government and police department.

The Grand Jury's comments, contained in that portion of the presentment captioned "Observations and Conclusions from Testimony" may be summarized:

A gambling operation was in existence at the particular location and time reported in the anonymous communication. The participants therein felt they had police protection, which was demonstrated by the nature of police action and inaction with reference to the operation. Recent changes in handling gambling information in the police department were not believed to provide a solution for the problems presented.

The presentment then said: "There are things which to us, as laymen, are disturbing." In the listing, with accompanying detail, which followed were these items: Political considerations seem to override all else in the assignment of officers to plainclothes and gambling details. Commanders have little to say regarding the composition of their own divisions or squads in the sensitive field of gambling enforcement. There is a lack of intelligent dissemination of gambling information among officers responsible for enforcement of gambling laws. A precinct commander invited a known gambling "Kingpin" to the precinct under circumstances "which forces a jury to look carefully into anonymous allegations that the purpose might be to arrange terms for police protection." A low priority is given to gambling enforcement in the department.

These comments included the paragraph in question which reads (after deletion of the portion expunged by the Assignment Judge before filing):

"We have a lack of full confidence in the Newark Police Department's enthusiasm for a crackdown on the underworld. Nowhere has our attention been focused on any policy statement by the police department vigorously attacking organized crime. This is especially disturbing in light of testimony indicating that the Public Relations Director of the Police Department, one Harry Rosen, is also on the pay-

roll of Automatic Merchants, one of a complex of vending operations dominated by Gerardo Catena, who has been widely reputed to be a syndicate leader in New Jersey."

This part of the presentment concluded with these observations:

"We note that our examination concerned a narrowly defined segment of police work in Newark. A critical appraisal in this area is not meant to and should not be construed as criticism of the handling of other facets of police work. We are impressed with Director Spina's sincerity and devotion to the public safety. Yet, we are convinced that unless gambling enforcement is made part of an overall vigorous enforcement policy, the entire reputation of law enforcement suffers; and where there are circumstances which cast doubt on the integrity of a police officer in gambling enforcement, that doubt will prevail."

In the other portion of the document entitled "Recommendations," the Grand Jury suggested not only departmental disciplinary action with respect to the particular gambling investigation, but also extensive changes and improvements in the entire police department organization and operations, with consideration by future Grand Juries of "what progress Newark has made in remedying the problems here presented."

The overall high level and constructive nature of the presentment is epitomized in its final paragraphs:

"In conclusion, this message recognizes that crime is a serious problem in the City of Newark and the task of combating it is difficult and complex. While this Grand Jury has heard many witnesses, it presumes, by no means, to offer a full and complete solution to the problem of organized crime—nor does it pretend to set up totally revised organizations and procedures to control it. The review, observations and recommendations set forth herein are designed to direct attention of our citizens to the evils within our borders; and arouse all public spirited men to their duty and urge that all possible steps be taken to meet the challenge. Weaknesses and deficiencies in the Police Department were outlined for the public welfare and they should serve as guideposts in those areas where corrections are needed. It is not intended to impugn efforts of dedicated police officers, many of whom have made life-time study of police methods and procedures. However, the recommendations made herein should be weighed in the light of all factors and circumstances existing in the City of Newark.

Let this initial impetus not end here. The fight against crime is a continuing one and demands constant, vigorous action in strengthen-

ing the bulwarks against the rising surge of crime, so that our heritages may be preserved. It is not anticipated that dramatic results will immediately ensue. The proposals are made to focus scrutiny on certain problems and urge that the necessary steps be instituted concerning them. In the main, success will depend on the spirit, vigor, training and character of the men in the Police Department, the City Government and the wholehearted support and confidence of the public. It has been said that a democracy is the easiest form of government to establish and yet the hardest to maintain. Constant vigilance on the part of all our citizens is essential. Let this be a landmark designating a timely move from past mistakes and the point of progress to more effective law enforcement in the control of crime in the City of Newark."

After examining the presentment and the testimony before the Grand Jury, Judge Waugh notified Rosen that he was mentioned in the document and afforded him an advance opportunity to inspect the relevant evidence presented to the Grand Jury, to offer any additional evidence on the subject matter and to be heard on the question of whether the paragraph or any portion should be expunged before filing. Rosen's counsel examined the underlying evidence, consisting almost entirely of his own Grand Jury testimony when called as one of the public official witnesses. He then moved to strike the entire paragraph on the ground that it amounted to censure, without adequate supporting evidence, for failure to discharge his duty as public relations officer of the police department in having not disseminated publicity directed at organized crime and gambling. Hearings were held in chambers. He did not then, and does not now, dispute the testimony before the Grand Jury. As additional evidence, he offered only copies of official documents with respect to the nature of his post and his appointment thereto. Thereafter, Judge Waugh decided to strike from the paragraph only the name of the city official who had appointed him and a quotation from a recent newspaper article.

It is completely obvious that the mention of Rosen in the presentment, in the context of the whole document as well as of the particular portion in which the reference appeared, can in no way be considered an improper censure of him as a

public official in the sense in which that concept was defined and applied in *In re Presentment by Camden County Grand Jury, supra* (34 *N. J.* 378). The subject matter of the Grand Jury's investigation and report was organized crime in Newark, especially gambling, and the ability of the police department to cope with it—an eminently appropriate subject for Grand Jury findings and comment. As this court said in *In re Camden County Grand Jury,* 10 *N. J.* 23, 66 (1952) :

"Thus grand jury presentments of public affairs serve a need that is not met by any other procedure. The grand jury provides a readily available group of representative citizens of the county empowered, as occasion may demand, to voice the conscience of the community. There are many official acts and omissions that fall short of criminal misconduct and yet are not in the public interest. It is very much to the public advantage that such conduct be revealed in an effective, official way. No community desires to live a hairbreadth above the criminal level, which might well be the case if there were no official organ of public protest. Such presentments are a great deterrent to official wrongdoing. By exposing wrongdoing, moreover, such presentments inspire public confidence in the capacity of the body politic to purge itself of untoward conditions."

We find quite astounding the statement in appellant's brief that "[t]he fact that the Grand Jury has a lack of confidence in the Newark Police Department is in itself not a proper subject of comment in a presentment." The whole of the penetrating but constructive document was in the highest public interest.

Within this overall frame of reference, the jury most soundly commented in particular on "things which to us * * * are disturbing." In referring therein to Rosen, the true thrust was not censure for failure to discharge his public duties. Rather it was basically the understandable expression of the jury that it was shocked, that any man with the association which Rosen had should be considered fit and permitted to hold any position in a police department. If criticism of anyone is to be inferred from the paragraph, it would be primarily of those city or police officials who were responsible for the appointment or continuance in position (if

the background was not known at the time of appointment) of a person who was or had been connected with one notoriously and commonly reputed to be a leader in syndicated criminal operations of a naturally corrupting character. A more appropriate matter for disclosure and public knowledge can hardly be conceived. Failure of the Grand Jury to report the information would certainly have been contrary to the public good.

Moreover, what the Grand Jury had to say in connection with Rosen was entirely justified by the evidence before it. He testified that he was a former newspaper man and was hired by Automatic Merchants, a vending machine company, in 1960 or 1961 to do "public relations, publicity." "I prepare releases now and then for trade magazines * * * and I help prepare small direct mail pieces to industry." While he denied that his duties encompassed arranging for the installation of vending machines, he did admit being instrumental in placing one in Newark police headquarters and recommending the sending of salesmen to various other possible sites. While his salary was $5000 a year, the job was part-time and he went to the concern's place of business only once a week or once in two weeks.

He knew that Gerardo Catena, with whom he had been acquainted for 30 years, was interested in the business and saw him there, although he could not specify the office he held. He knew Catena's son-in-law to be an active official in another vending machine company occupying the same premises. Catena's identity and reputation were adequately made known to the jury. The jury had before it a publication summarizing the quite common information and reputation that he was in attendance at the notorious Cosa Nostra gathering at Appalachin, New York. The publication further stated that he had been the director in the New Jersey area of that underworld organization's activities while the former leader was in jail. Whether that statement is true is beyond the point. The condition the Grand Jury properly found to be unseemly is the employment in the police department of

Rosen, who was simultaneously on the payroll of a company in which a man of such repute was a prominent figure.

Rosen, after working for the victors' side in the 1962 Newark municipal election, was appointed in July of that year to the newly created position of public relations officer in the police department, a post which more than a year later received permanent civil service status. He could not say whether the appointing authority knew at the time of his connection with Automatic Merchants, which he had continued while in city employ. The police department post was full-time, with a $7500 annual salary. He described his duties to the jury in this fashion:

"* * * my job is to try and project a better image for the Newark Police Department. I handle all press releases, all announcements by the Police Director. I watch out for breaking stories by the Police Director, if arrests happen, something happens, if it's a pretty big story I try to build it up so that the Department gets the most out of it. I prepare brochures for the Department like we had a campaign 'Fight Crime with Light.' * * * I put out various brochures like on car thefts, narcotic addicts and others."

It was clear from his testimony that he worked under the Police Director, having a desk in his office, and that while at least special or policy releases might be suggested by either of them, none was issued without the Director's approval. It was also clear that the two had never discussed police publicity relative to gambling or other organized crime, although Rosen said he planned to talk to the Director about the subject after the Grand Jury investigation was completed. The jury also had before it the testimony of a deputy police chief of the city who said that the Catena family controlled the vending machine companies in question and that because of Rosen's association "I was wary about letting any information out to him that would defeat our purpose."

As far as the State's cross-appeal is concerned, while the statements which the Assignment Judge struck from the paragraph of the presentment might properly have been retained, his action in this field is subject to review only on the

basis of abuse of discretion. *R. R.* 3:3–9(e). We feel we should defer to his exercise of judgment in this respect and so are not inclined to disturb what he did.

The order of the Assignment Judge is affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR and HALL—5.

*For reversal*—None.